152 So.2d 36

Clair C. FITZMORRIS, wife of Curtis J. PURSELL and Curtis J. Pursell,

v.

John J. KELLY.

No. 46149.

March 25, 1963.

Rehearing Denied April 29, 1963.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

———◆———

Cronvich, Ciaccio, Wambsgans & Perry, Alwynn J. Cronvich, A. W. Wambsgans, Metairie, for plaintiffs-relators.

Frank C. Moran, Jr., New Orleans, for defendant-respondent.

McCALEB, Justice.

Plaintiffs, Mr. and Mrs. Curtis J. Pursell, are seeking the rescission of their purchase from defendant, John J. Kelly,[1] on March 4, 1958, of Lot 13–A, Square 633, First District of New Orleans, together with the improvements thereon consisting of a wooden two-story frame combination grocery store and residence bearing municipal No. 238 South Salcedo Street. The basis for the action is that the building, which was more than 40 years old at the time of the sale, contains hidden vices and defects resulting in part from extensive termite damage to the interior, it being alleged that these defects could not have been discovered by simple inspection; that plaintiffs were not aware of the unsound condition of the building and that they would not have purchased the property had they known of the vices and defects therein.

The primary defense to the suit is that plaintiffs could have discovered all vices and defects in the premises by simple inspection and, consequently, the demand for redhibition is without legal foundation.

A trial on these issues ensued in the district court during which approximately 400 pages of testimony was elicited with respect to the condition of the building, the vices therein and the causes therefor. After hearing the evidence, the district judge came to the conclusion that the defects existing in the property were discoverable by simple inspection and he accordingly rendered judgment dismissing the suit.

Plaintiffs then appealed to the Court of Appeal, Fourth Circuit, where the judgment was affirmed. That court, while finding that the building contained certain defects, i. e.,—two of the outside walls were bowed and leaning; there was a slanting and "shaky" upstairs room and there was a leak in the roof—declared that all could have been discovered by simple ocular inspection. However, unlike the district judge, the Court of Appeal found that the termite infestation, which caused damage to part of the building and contributed to the excessive dry rot of the studs, was not discoverable by simple inspection "as it was hidden behind the plaster and weatherboards and in and beneath the flooring"

1. On October 12, 1962, while the case was pending here on writ of certiorari, Mr. Kelly died and the administratrix of his succession, Anna May Kelly, has been substituted as party defendant in these proceedings in accordance with the rules of this Court.

and that the damaged floor was obscured by defendant's furniture and carpeting. Notwithstanding this finding, the court resolved that, due to the age of the building, plaintiffs should have known from its appearance that there was something defective about the premises "otherwise the walls would not be bowed and leaning, nor would the upper room be in the condition it was." On this premise, it was concluded that the visible defects should have been sufficient to place plaintiffs on inquiry; that they were required under the circumstances to have had a more comprehensive inspection made of the building to determine its true condition and that, failing to have done so, "they [cannot] now demand a rescission of the sale or a reduction in price in any amount." See Pursell v. Kelly, La.App., 139 So.2d 12.

It was because of the foregoing holding of the Court of Appeal, which appears to be contrary to the law of this State placing on the vendor the obligation of warranting the thing sold against hidden defects or its redhibitory vices (see Articles 2475, 2476 of the Civil Code and McEachern v. Plauche Lumber & Construction Co., Inc., 220 La. 696, 57 So.2d 405) that we granted this writ of certiorari on plaintiffs' application.

■ At the outset of our examination of the case it is well to consider the nature of plaintiffs' demand. It appears from their petitions, original and supplemental, and throughout the trial in the district court and on appeal, plaintiffs have insisted that the sale be rescinded and their prayer is that it be declared a nullity and that they recover from defendant $22,474.93, representing the purchase price and expenses of the sale, damages and cost of preservation of the property and legal interest from judicial demand. Yet, nowhere in plaintiffs' pleadings, nor in the evidence adduced in support of their allegations, is it shown that plaintiffs have tendered the property back to defendant or offered to restore the status quo. That a tender of the object sold and a restoration of the status quo of the parties [2] is a condition precedent to the maintenance of the redhibitory action is well settled in the jurisprudence of this State. See Tucker v. Central Motors, 220 La. 510, 57 So.2d 40 and the cases there cited and, also, the numerous authorities of this Court and the courts of appeal which have been collected and cited in notes 85 and 88,

2. It may be that plaintiffs were unable to tender the property and restore the status quo. It appears from the record that the purchase of the property was effected by means of a homestead loan of $20,-000, although the purchase price was only $15,000. The property was transferred by defendant to the homestead which advanced the purchase price and then the homestead transferred this property and another piece of land owned by plaintiffs back to them and took a $20,-000 mortgage on the whole.

under the annotations to Article 2520 in West's Louisiana Civil Code, Vol. 10. Accordingly, it would have been proper to have dismissed plaintiffs' suit in its entirety on defendant's exception of no right or cause of action which was referred to the merits of the case in the district court.[3] However, in view of the provisions of Article 2543 of the Civil Code that, in a redhibitory suit "the judge may decree merely a reduction of the price", we will treat the action as one in quanti minoris, since it was apparently considered as such by both the district judge and the Court of Appeal. Such an action, according to Article 2544 of the Civil Code, is subject to the same rules and limitations as a redhibitory action.

A perusal of the record has satisfied us that the following factual findings of the Court of Appeal anent the physical condition of the premises involved, are substantially correct:

"The wall on the Canal Street side is bowed and leans, and the walls on the Salcedo and Palmyra Street sides are leaning; the upstairs front room slopes and appears 'shaky'; the foundations have sunk, and the sidewalks are below grade from soil subsidence. Mouledous, architect, plaintiffs' chief witness,

makes it very plain that such defects were visible and discoverable by the use of the naked eye. He stated he noted the above defects the first time he drove up to the property in his automobile. The plaintiffs visited the premises before agreeing to buy, and they saw, or should have seen, said conditions. Mouledous further stated that all the buildings in the neighborhood are leaning, which we deem a good indication that the whole neighborhood is deteriorating.

\*　　\*　　\*　　'　　\*　　\*

"Mouledous made several examinations. He probed the flooring and walls and removed weatherboards. Besides pointing out the above mentioned condition of the walls and the sloping upper front room, Mouledous stated that almost throughout the building there was dry rot and termite damage; a majority of the studs were in bad condition; the kitchen floor had dropped two or three inches (this occurred after the sale); the flooring on the upper end of the inside stairway had been damaged; damage existed around the chimney on the first floor; there were termites in the attic but no 'bad' damage; the support to the stairs

---

3. We observe, however, that this issue has never heretofore been presented by counsel for defendant under the exception of no cause of action. Nevertheless, under the broad powers vested in the appellate courts of this State under Article 2164 of the Code of Civil Procedure, this Court has the right to dispose of the redhibitory action on the exception even though counsel has not raised the point

was damaged; the roof leaks in the rear; all damage appears to be 'old'. Mouledous attributed 50 percent of the defects to the ravages of termites and 50 percent to dry rot. This later condition results from excessive dampness in lumber and the passage of time. His opinion was that the building had sustained more than the usual wear and tear. * * * "

Mouledous admitted that, in a building 40 years old, a certain amount of dry rot of the studs was to be expected and that he would consider that age alone would cause two out of twelve studs to rot. In the present instance, in which he found 50% dry rot, he attributed this mainly to the termite activity over a long period of time. The repairs and corrections recommended by Mouledous, which he declared would make the building as good as new if not better, would cost $9871.15. This figure alone seems extremely high for a building valued at $12,000 since the lot on which it stands is worth $3,000.[4]

In addition to other things, Mouledous pointed out a defect which he claims to be structural. Some years ago concrete mixed with cinders had been poured through the flooring of the rear room and the hardened concrete reached over the ground up to the floor boards, which acted as a prop for the floor. Mouledous stated that this is not present day procedure (and defendant's expert, Mr. Nolan, concurs in this view). He disapproves of it but he could not say that it was not an accepted practice at the time the work was done. It appears that, after the sale of the property, the kitchen floor sunk two inches so that now the flooring rests upon the concrete. The sinking was caused by the disintegration

---

4. In our recent cases (see Lemonier v. Coco, 237 La. 760, 112 So.2d 436, citing McEachern v. Plauche Lumber & Construction Co., Inc., 220 La. 696, 57 So.2d 405 and Wilfamco, Inc. v. Interstate Electric Co., 221 La. 142, 58 So.2d 833) it has been concluded that, in actions for quanti minoris involving the sale of realty, the measure of recovery is the amount necessary to convert the unsound structure into a sound one. The reason given for this exception is that the usual rule—that the measure of recovery is the difference between the value of the thing sold in its defective condition and its value as warranted (see Iberia Cypress Co. Ltd. v. Von Schoeler, 121 La. 72, 46 So. 105 and other cases)—cannot be applied in cases of this sort inasmuch as the difference in value of real estate is not readily or easily ascertainable unless there has been an immediate resale of the property.

In the event it were held in the instant case that defendant was liable for a reduction in price, application of the aforementioned method of measuring recovery would appear to be highly inequitable for this would require defendant to pay the costs, amounting to almost $10,000, to repair a building valued at only $12,000 at the time of the sale. In instances where the costs of the repairs are far out of proportion with the price paid for the property, it would seem that a rescission of the sale would be the only just and proper remedy when the vendee has shown that he is able to place his vendor in substantially the same position as he was prior to the sale.

of the studs surrounding the room and this disintegration unquestionably resulted from the termite damage.

■ The important question in the case, then, is whether the termite damage was discoverable by simple inspection, as found by the district judge. We say this because the evidence plainly shows that most of the defects presently existing in the premises, other than normal wear and tear, are attributable to termite damage. The other defects, such as the leaking roof and the bowed and leaning walls, were clearly apparent and should have been discovered by ocular inspection.

A careful examination of the evidence also convinces us that the district judge was correct in his holding that the termite damage was discoverable by a simple inspection of the premises. Mr. Robert L. Thompson, a witness for plaintiffs who is engaged in the pest control and termite business and who visited the premises at plaintiffs' request, testified at length respecting the presence of termites in the premises. He stated without equivocation, in answer to a question propounded by the judge, that a superficial examination was sufficient to disclose that the building, and particularly the lower floor, was infested with termites, "in other words you could see that as you walked in and went on the side."

To the same effect is the testimony of plaintiff's witness, Mr. Schaff, a general contractor who made an estimate of what it would cost to reconstruct the damaged area, and that of Mr. Mouledous, plaintiffs' architect, and Mr. Nolan, the architect employed by defendant to inspect the property. It is true that Mr. and Mrs. Pursell and Mr. and Mrs. Dukes, to whom the Pursells rented the property, testified that a cursory inspection did not reveal the presence of termite damage as that damage was hidden behind the papered walls, the covered floors and the furniture placed within the building. This testimony evidently impressed the Court of Appeal and it was for this reason that if found that the termite damage was not apparent or discoverable by simple inspection.

On the other hand, the trial judge apparently did not place much credence in this testimony. Since the judge saw the witnesses and heard them testify, he was in a better position than the appellate courts to assess the veracity of their evidence, particularly so when the statements of plaintiffs and their tenants are contradicted by other evidence. The defendant denied that the carpeting in the house was wall-to-wall and stated that there was no reason why anyone could not have examined the floors, the stair-well, the staircase and other parts of the premises. It appears too that Mr. Pursell only visited the property once, on Sunday, January 5, 1958, be-.

fore he made a written offer through the real estate broker to purchase it. This offer was accepted by defendant three days later. Under cross examination, Mr. Pursell admitted that, when he visited the premises with the real estate agent, he had the opportunity of examining all of the rooms and no reason is actually ascribed by him as to why he did not make some sort of examination of the structure for defects which were undoubtedly obvious.

■ Article 2521 of the Civil Code excludes, from the vices for which redhibition may be demanded, apparent defects "that is, such as the buyer might have discovered by simple inspection * * *". Inspection, as defined by Webster's New International Dictionary, 2nd Ed., means a strict or prying examination. This connotes more than mere casual observation; it envisages an examination of the article by the vendee with a view of ascertaining its soundness. However, the Code limits the exclusion of warranty to those defects discoverable by a *simple* inspection. This, it is manifest, relieves the buyer of examining the inner or hidden parts of the object of the sale for the purpose of ascertaining the existence of latent defects.

■ The proper test to be applied to this case, we think, as in all other cases of this kind, is whether a reasonably prudent buyer acting under similar circumstances, would

have discovered the presence of termite damage in the premises. The evidence shows that termite damage in old buildings situated in the city of New Orleans is prevalent and, indeed, we think this to be a fact within the common knowledge of most persons living in this vicinity. Hence, it is reasonable to charge plaintiffs with knowledge that the old building they were buying might be infested with termites. Under these circumstances, they should have attempted to ascertain, by simple inspection of the premises, the presence of termite damage. Had they done so, we think they would have been bound to have discovered some of the wood damage without defacing any portion of the structure.

■ Counsel for plaintiffs argue that extensive termite damage concealed in structural walls is not an apparent defect, discoverable by simple inspection within the meaning of Article 2521 of the Civil Code and they cite in support of their position the cases of Reuhmkorf v. McCartney (La.App., 2nd Cir.), 121 So.2d 757 and Foreman v. Jordan (La.App., 3rd Cir.), 131 So.2d 796. This would be a correct statement of the law if the facts of this case showed that *all* termite damage had been concealed in the structual walls, for then it could not have been discovered by simple inspection. But, in this case, some of the termite damage was unquestionably apparent and, this being so, it became plain-

tiffs' duty to make further investigation. Obviously, when the defect complained of is partially apparent, the buyer who, nevertheless, purchases the thing without further investigation must be held to have waived his right to sue in quanti minoris.

The Court of Appeal cases relied on by counsel are distinguishable on their facts.

For the reasons assigned, the judgment is affirmed.

152 So.2d 41