STOULIG, Judge.
This is an action in quanti minoris brought by plaintiffs, who allege that the home they purchased from defendants contained substantial hidden termite damage which was discovered only after sale. Defendants made termite exterminators Melvin Billiot and Paul Billiot, doing business as Billiot Bros., and Billiot Bros., Inc., third party defendants, alleging reliance upon their certification that the termite damage to the house was less than $100 and prayed for indemnification should they be cast in judgment. Additionally, Billiot Bros., Inc., third partied Melvin Billiot. After trial of the matter judgment was rendered in favor of defendants, dismissing plaintiffs’ suit at their cost and further dismissing the third party demands. From the judgment on the principal demand plaintiffs have lodged this appeal. No appeal was taken from that portion of the judgment dismissing all third party demands and therefore the issues presented therein are not before us.
On February 22, 1967, John C. Fraser accepted William J. Ameling’s offer to sell his residence at 2217 Wirth Place in the City of New Orleans for a stated price of $26,000. The following stipulation was included in the purchase agreement:
“If roof & termite[1] damage in excess of $100.00 is ascertained on an inspection *97 which must be made within (3) working days of acceptance, this agreement will be null and void without expense to either party except that vendor shall reserve the right, at his option to pay any roof damage in excess of said $100.00, in which event the agreement of sale will be binding. Seller is to pay for inspection fee.”
According to the testimony of Bernard Freedman, defendants’ real estate agent, Billiot Bros, was contacted within two days of the agreement and, after making an inspection, reported to him that there was a minimum amount of termite damage and that it was considerably less than $100. Plaintiffs’ agent was also apprised of this fact. Although no “termite certificate” had been presented despite numerous requests by him for it, Mr. Fraser nevertheless went through with the act of sale on March 17, 1967, with the assurance that the certificate would be forthcoming. Subsequently, he received a certificate signed by Paul Billiot, indicating that visible subterranean termite damage “should not exceed $100.”
Shortly after moving into the home Fraser became aware of some old termite damage and active infestation and contracted with Billiot Bros, to eradicate the pests. On April 24, 1967, plaintiffs sent a letter through their attorney Charles Bar-bera to Ameling demanding reimbursement of $250 for the expense of eradication, together with an amount necessary to repair the termite damage, which was provisionally estimated to exceed that sum by several hundred dollars. No reply was ever received. Plaintiffs began to discover more termite damage “in a small way,” but it was not until the following October or November that he became fully aware of the substantial damage to the home, which has since been repaired at a cost of $4,200.
It is well settled in our jurisprudence that latent termite damage may be the basis of an action in quanti minoris. Thompson v. Klein, 188 So.2d 180 (La.App. 4th Cir. 1966); Foreman v. Jordan, 131 So.2d 796 (La.App. 3d Cir. 1961); Ruehmkorf v. McCartney, 121 So.2d 757 (La.App. 2d Cir. 1960).
However, where the termite damage is partially observable by a simple inspection of the premises, the Louisiana Supreme Court has held in the leading case of Pursell v. Kelly, 244 La. 323, 152 So.2d 36 (1963), that the purchaser who nevertheless buys without further investigation waives his right to sue in quanti minoris. In that case the court found that some of the termite damage to the premises which plaintiffs purchased could have been discovered by a simple inspection and, accordingly, charged plaintiffs with this knowledge and the corresponding duty to make a further examination. However, since the purchasers failed to detect the damage on the pre-sale inspection of the house and no further exploration was made, the court was not faced with the problem of determining what actions by the prospective purchaser would satisfy this obligation and did not find it necessary to set down any specific guidelines.
The obvious reason for the court’s imposition of this duty is that visible defects should alert the prospective purchaser to the possibility of further damage and he should be required to make a more comprehensive examination with a view toward determining the true condition of the house. However, a practical application of this rule raises problems which will be more fully discussed at a later point.
In the case of Bonhagen v. Hooper, 195 So.2d 447 (La.App. 4th Cir. 1967) (writ refused, 250 La. 634, 197 So.2d 652 (1967)), this court was faced with interpreting the duty imposed by Pursell on the buyer to make a further investigation once he is charged with knowledge that some damage is present. There, the plaintiff Bonhagen entered into an agreement to purchase defendant’s residence, conditioned upon the purchaser’s ability to termite proof the home and make essential struc *98 tural repairs due to any termite damage at a cost not in excess of $300. In accordance with this stipulation plaintiff had four pest control organizations inspect the premises, and accepted a bid of $165 to termite proof the dwelling, which was found to have active termites. He was advised by the exterminator that the inspection revealed no structural damage from the old or current infestation which warranted repair. The sale was completed, subsequent to which plaintiff discovered, by removing two cracked weather boards, extensive hidden termite damage which was repaired at a cost of over $1,000.
The Bonhagen court cited Pursell, supra, and denied recovery. Although it did not indicate whether any damage had been observed by plaintiff Bonhagen prior to his hiring of the exterminator, it considered the information which he obtained from that source prior to the sale sufficient to have imposed upon him the duty of making further inspection. The court stated:
“ * * * [W]e must conclude that plaintiff did not act with reasonable prudence under the circumstances. Having notice of some old damage and current infestation, he was under duty to make further inspection. * * *
% % ‡ ‡ * *
“ * * * True, the extent of damage was not discovered, and it could not have been found by any inspection short of defacing the house, but our appreciation of Pursell is that this became necessary once the simple inspection revealed the possibility of more extensive damage.
>fc i|C 5}c ;}i l}i
“ * * * [The inspection by the exterminator] gave Mr. Bonhagen information from which he was under duty to make such further inspection or have it made by persons qualified in building construction and repair. He cannot be relieved of this duty merely because the exterminator, who is not a builder or repairman, thought there was no damage beyond that which his inspection had revealed.” 195 So.2d at 450-451.
The district judge in the instant suit found the Bonhagen case to be controlling and, accordingly, denied plaintiff recovery. Careful reflection upon the matter by this court convinces us that the plaintiff was properly denied recovery, but that it was not necessary to adopt the far-reaching rationale of the Bonhagen court. In the present case the plaintiffs Fraser fell far short of the action taken by Bonhagen, which can be seen by a closer review of the facts.
In his written reasons for judgment the trial judge concluded: •
“The sum total of the testimony of the witnesses indicates to the Court that there was some manifestation of termite infestation prior to the passage of the act of sale. * * * [T]he fact that there were termites was evident by visual inspection alone.”
The evidence and testimony contained in the record amply support this conclusion. Although Mr. Fraser testified he did not observe evidence of past or present termite infestation during his inspection of the house prior to the purchase agreement, Mrs. Fraser admitted upon oral examination that she was aware of some termite damage before they agreed to buy the home, though she denied any knowledge of active infestation at that time. Furthermore, the testimony of plaintiffs’ own witness, William Ricciuti, an architect accepted by the court as an expert, indicated that evidence of past termite infestation in the basement of the home was visible from a distance of six to eight feet, thus making it observable upon simple inspection.
While the plaintiffs were not aware of the full extent of the damage until after they had purchased the home, they were properly charged with the knowledge that the premises were partially infested and were alerted to the possibility of more *99 extensive damage. Yet they took no action whatsoever which might have shown the true condition of the house, but relied solely upon the assurances of other persons that an inspection had shown that repairs due to termite damages to the home would be under $100. Certainly, under these circumstances they cannot be said to have acted as reasonably prudent persons or that they satisfied the duty of Pursell to make “further investigation.”
Nor can it be successfully argued by plaintiffs that they are protected by the clause in the purchase agreement which required a termite inspection to be made. That clause simply provided that the agreement would be null if the inspection showed termite damage in excess of $100. Since the inspection did not reveal such damages and since plaintiffs received no absolute guarantee from either the inspector or seller regarding the inspection, it' cannot now serve to grant him grounds for an action in quanti minoris which he otherwise would not have had.
We note in passing, however, that perhaps the interests of justice would be best served by the adoption of a rule whereby one who purchases a home in which there is some evidence of termite activity does so at his own risk. The Pursell and Bonhagen decisions imply that hidden termite damage can be uncovered by “further investigation” which in our opinion is misleading and creates an unfortunate chimera in the jurisprudence. We take judicial notice of the fact that it is all but impossible for a prospective purchaser to determine whether there is termite damage hidden within innumerable inaccessible parts of a given residence without defacing the property which he does not own. We also seriously doubt that he will be able to get an exterminating company or a builder to unconditionally guarantee that a building is free of any hidden damages caused by these pests which are so prevalent in our area. Rather than place an insurmountable burden on a prospective purchaser, he should simply be held to assume the risk of further hidden damage where a simple investigation reveals previous termite damage in the home he proposes to purchase.
Judgment is affirmed, costs to be borne by the appellants.
Affirmed.

. The words “& termite” were inserted by hand in the printed agreement.