SHORTESS, Judge.
Berton Ronald Carrier and his wife Cheryl Tynes Carrier (plaintiffs) bought a house and two lots in Slidell, Louisiana, legally described as Lots 1 and 2 of Square 4, Pecan Grove Subdivision, from Edward John Dazet and his wife Judith Bono Dazet (defendants) on May 14, 1979, for $31,-000.00.
Almost immediately thereafter, plaintiffs began renovating the house and discovered evidence of fire damage. The parties were *181 unable to amicably resolve their differences, so plaintiffs filed suit seeking diminution of the sales price and damages. The defendants filed a third party claim against their ancestor in title, Louise Drohan Furr, who did not appear or otherwise answer the third party demand. A preliminary default was entered against her. The case was tried, and the trial court, with written reasons, ruled in favor of plaintiffs and ordered a reduction of $3,000.00 in the purchase price, but denied defendants’ third party claim against Louise Furr. Defendants have appealed.
The house in question was originally located in Nicholson, Mississippi, and was owned by Elton Luke, who had it moved to Slidell, Louisiana, to the above-described lots. Luke testified that he purchased the house in 1968 or 1969; that it had not been damaged by fire while he owned it; and that he sold the house on January 9, 1970, to Mrs. Louise Furr. Mrs. Furr did not occupy the house but permitted Joan and Marvin Bordelon (her daughter and son-in-law) to live in it. Mrs. Furr sold the property to defendants on April 10, 1978, and they never occupied the house but rented it to the Bordelons. The Bordelons, therefore, occupied the house from January 9, 1970, until defendants sold it to plaintiffs.
Mrs. Joan Bordelon testified that she and her now estranged husband moved into the house in January of 1970 and had no problems with it, and that no fire occurred while they occupied it. During their occupancy, the Bordelons installed central air conditioning and heating. While doing so, they noticed charred wood in the attic, did not consider it a problem, and even positioned the platform for the air conditioner in the attic.
Plaintiffs inspected the house on one occasion prior to purchasing it, and Mrs. Bor-delon was present at this inspection. Mrs. Bordelon testified that she did not tell them about the charring in the attic because she did not feel that it was a problem, but she did show plaintiffs the stairs leading to the attic and told them they could go up if they so desired. It is conceded that plaintiffs did not inspect the attic, but only inquired as to how much insulation had been installed.
Within a day or so after plaintiffs purchased the house, Berton Carrier, with Elbert Carrier (his father) and Lawrence Willie, removed a wall between two rooms to make one large bedroom. While removing the wall, they discovered that some studs were burned and charred. Further inspection revealed that a large portion of the roof was burned, including the main beam that runs across the roof as well as some of the roof joists. Subsequently, twenty-one wall studs were replaced or reinforced with new studs, and temporary bracing was done to shore up the ridge beam and rafters. Plaintiffs also discovered that the sub-flooring in the bathroom had rotted. Additionally, before the year elapsed, the roof began leaking in the vicinity, of the charred roofing which required repair.
Defendants present these issues on appeal:
1. Whether any defect existed which warranted a reduction in purchase price;
2. Whether the alleged defect was discoverable by simple inspection.
Plaintiffs and their witnesses, i.e., Elbert Carrier and Lawrence Willie, testified that the burned and charred studs became evident when they removed the sheet rock from the partition wall. This prompted inspection of the attic where additional evidence was found of fire damage to the roof, its beams and supports. These facts are not contradicted and are, in fact, corroborated by defendants’ witnesses. Mrs. Bordelon testified that her husband found the same evidence of fire damage when he was preparing to install the central air conditioning unit. Both Elbert Carrier and Lawrence Willie testified that remedial work was necessary immediately and that additional work was necessary to repair the damage to the roof, its joists and the main beam.
The trial judge, in his reasons for judgment, found:
“The attic was charred approximately one-half over the bedroom and dining room, with the main damage over the *182 bedroom. The carpenter, Mr. Willie, testified there is severe structural damage that must be repaired or there is danger of the roof caving in. They actually did some temporary bracing as well as could be done at the time, anticipating doing the repair work later.”
Defendants produced no evidence to rebut Willie’s testimony. The trial judge’s finding that there was a defect was certainly not manifestly erroneous.
While defendants admit that the burned studs were non-apparent defects, they allege that the damage in the attic was apparent and could have been discovered by simple inspection. In this regard, the trial judge found that:
“Plaintiff had not examined the attic previously because there was no light, and he was told there was not much insulation which was his concern.”
Defendants cite Parsell v. Kelly, 244 La. 323, 152 So.2d 36 (1963), wherein the Supreme Court addressed the issue of what defects were discoverable by simple inspection and declared that:
“The proper test to be applied ... is whether a reasonably prudent buyer acting under similar circumstances, would have discovered the presence of termite damage in the premises.” 152 So.2d at 41.
Berton Carrier testified that he was shown the hidden staircase that led to the attic; that he asked how much insulation was in the house and was told there was very little insulation; that when the stairs were exposed, the attic was very dark and he could not see anything. He testified he did not feel he needed to look in the attic after he was told about the insulation.
Under these facts as found by the trial court, we cannot say manifest error was committed. We agree that a prudent buyer could reasonably forego an attic inspection under these facts.
The final issue urged by defendants is that the trial court erred in refusing to grant judgment in their favor on the third party demand against their ancestor in title. We have found that the trial judge was not manifestly in error in finding that a non-apparent defect existed in the premises. The evidence indicates that said defect existed at the time defendants purchased the house from Mrs. Furr and that it was not apparent at that time, either. Mrs. Bordelon (Mrs. Furr’s daughter) verified that no fire occurred during the time she occupied the premises. She further verified that her husband found fire damage when installing the air conditioner. The evidence also indicated that defendants did not know of this damage until plaintiffs made their complaint shortly after the sale. The sale between plaintiffs and defendants took place on May 14, 1979. The defect was discovered on May 15,1979. Plaintiffs filed suit on May 8, 1980, against defendants. Defendants answered and filed their third party demand on July 10, 1980. Plaintiffs’ testimony indicated that a repair estimate was sent to defendants toward the end of May and within the first two or three weeks of the sale.
The provisions of Civil Code Art. 2546 provide:
“In this case, the action for redhibition may be commenced at any time, provided a year has not elapsed since the discovery of the vice.
“This discovery is not to be presumed; it must be proved by the seller.”
The trial judge, in dismissing the third party demand, stated:
“The Court feels there is a serious question of prescription on the claim against her, and finds the evidence generally inadequate to support the claim as to her.”
Defendants were proceeding by default and certainly presented a prima facie case against Mrs. Furr. The trial court could not supply a defense of prescription for her. To do so would violate the express provisions of C.C.P. Art. 927, which provide in pertinent part:
“The court cannot supply the objections of prescription and res judicata, which must be specially pleaded.”
We therefore conclude that the trial judge erred in dismissing this third party demand.
*183 Judgment on the main demand is affirmed at defendants’ costs. Judgment of the trial court which dismissed defendants’ third party action against Mrs. Furr is reversed, and there is judgment in the third party demand in favor of the defendants and against Louise Drohan Furr for $3,000.00, together with legal interest thereon from date of judicial demand until paid and for all costs.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.