634 So.2d 1243 (1994)
Scott M. BROUILLETTE and Stacey Kelly Brouillette, Plaintiffs/Appellants,
v.
Bernice G. DUCOTE, Pamela Ducote Ruemker, Mary Ducote Daigrepont and Paula Ducote Parenton, Defendants/Appellees,
and
Emanuel Morris, d/b/a Morris Pest Control, Third Party Defendant/Defendant/Appellee.
No. 93-990.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1994.
*1244 Rodney Marchive Rabalais, Marksville, for Scott M. Brouillette.
Maxwell J. Bordelon Jr., Marksville, for Bernice G. Ducote et al.
Angelo Joseph Piazza III, Marksville, for Emanuel Morris.
Darrel Dee Ryland, Joseph Blaise Treuting, Marksville, for Pamela Ruemker etc.
Before WOODARD and DECUIR, JJ., and BERTRAND, J.[*], Pro Tem.
*1245 LUCIEN C. BERTRAND, Jr., Judge Pro Tem.
Scott and Stacey Brouillette appeal the involuntary dismissal of their claim in redhibition or alternatively in quanti minoris against the vendors of a home and their tort and contract claims against the pest control operator who issued two "wood destroying insect reports" prior to the sale. For the following reasons, we affirm in part, reverse in part, and remand.

PROCEDURAL HISTORY
The Brouillettes sued Mrs. Bernice Ducote and her three major daughters, contending that the home they purchased from these defendants on December 1, 1991, had extensive, hidden termite damage on the date of the sale. The Ducotes denied liability and filed a third party demand against Emanuel Morris, the pest control operator who treated the home and issued two termite inspection certificates prior to the sale. The Brouillettes then amended their petition to name Morris as a defendant, alleging that Morris failed to treat the home properly, misrepresented that he inspected the home when he in fact did not, and failed to document known termite damage. Mrs. Ducote died before the case came to trial, and the Brouillettes named her succession administrator, Maxwell Bordelon, as a defendant. At the close of the plaintiffs' case in a non-jury trial, the trial court granted the defendants' motion for involuntary dismissal, finding that the Brouillettes failed to prove their claims against the Ducotes and Morris by a preponderance of the evidence. However, the trial judge awarded the plaintiffs $1,000 that the Ducotes had placed in escrow at the time of the sale.

FACTS
In August of 1991, Mrs. Bernice Ducote asked Emanuel Morris to inspect the home in question for possible termite infestation and damage. Morris found evidence of active termite infestation with damage to ceiling tiles, molding and paneling in the bathroom and near the fireplace. He treated the infestation problem and put the home under a standard pest control contract, guaranteeing his treatment for one year. He also presented Mrs. Ducote with a hand-drawn diagram of the house, marking the areas where he found active infestation and damage. This diagram, or "graph" was signed by Mrs. Ducote and was attached to the standard contract form. However, the "graph" was not given to the Brouillettes or to their closing attorney at the time of the sale, although the contract form was. After Mrs. Ducote's death, the original graph drawn by Morris was found among her effects.
Mrs. Ducote contacted Morris again in October of 1991, asking him to issue a "wood destroying insect report" that was required for the sale of the house. Morris eventually prepared two such reports, one with an inspection date of October 9, 1991, the other with an inspection date of November 25, 1991. It is undisputed that Morris did not actually inspect the Ducote home on either of those two dates. On the inspection form, which is supplied by the State of Louisiana, Morris checked off block 9C with the notation, "Visible evidence of subterranean termites was found. Proper control measures were performed." However, Morris did not fill in block 9E which required a listing of areas where visible damage had been found.
The Brouillettes began living in the home in September of 1991, but the act of sale was not passed until December 1, 1991. They testified that the only damage they observed in the home before the sale were discolored ceiling tiles and a leak in the toilet. They testified that at the closing, they saw the words "subterranean termites" on the inspection certificate prepared by Morris, but they were assured by Mrs. Ducote that the problem had been remedied by treatment.
Stacey Brouillette testified that she first became aware of a termite problem approximately four months after the sale, in March or April of 1992, when she came home one day and found termites in every room of the house. Since then, the house has been continuously infested with termites.
*1246 When the Brouillettes first saw the termites in their home, they immediately contacted Morris who showed them the "graph" that he had prepared for Mrs. Ducote. This was the first time that the Brouillettes had seen that document. According to Scott, the termites appeared to be coming from the same wall where Morris had indicated active infestation on the graph. After having Morris re-treat the home, the Brouillettes contacted Brent Scallan, a building contractor, to determine the full extent of the termite damage, if any. Scallan removed ceiling tiles, paneling and insulation throughout the house and observed several hidden points of entry for the termites, particularly in the bathroom area. He found moisture damage, as well as termite damage in the joists, ceiling, moldings and rafters. He estimated that repair of the damaged areas would cost approximately $3,646.
James Arceneaux, who served as the director of the Structural Pest Control Commission of Louisiana for 10 years, testified as an expert on behalf of the plaintiffs. Arceneaux inspected the Brouillette home on February 23, 1993, after Scallan had removed the paneling and fascia boards. Arceneaux found active infestation, as well as extensive damage throughout the house, including wooden studs and rafters near the fireplace, and the dining area, the attic and the bathroom. In his opinion, the extensive damage found indicated that, more probably than not, the termites were in the house in December of 1991.
Arceneaux also expressed his opinion on the standard of care owed by a pest control operator in preparing a wood destroying insect report. Arceneaux served on the committee that drafted the state termite inspection reports. He testified that Morris fell below the standard of care when he failed to fill in section 9E of the report dealing with visible evidence of termite damage.

INVOLUNTARY DISMISSAL
La.C.C.P. art. 1672(B) permits any party in an action tried by the court without a jury, at the close of the plaintiff's evidence, to move for a dismissal of the action as to him on the ground that upon the facts and the law, the plaintiff has shown no right to relief. The standard for granting an involuntary dismissal under La.C.C.P. art. 1672(B) was recently summarized by this court in G.B.M., Inc. v. Juna Corp., 611 So.2d 825 (La.App. 3d Cir.1992):
When a motion for dismissal at the close of plaintiff's evidence is made, such as in the case sub judice, the trial court should apply the preponderance of the evidence standard in weighing and evaluating the evidence. Mott v. Babin Motors, Inc., 451 So.2d 632, 637 (La.App. 3d Cir.1984); Bradley v. Hunter, 413 So.2d 674, 676 n. 3 (La.App. 3d Cir.1982), writ denied, 415 So.2d 952 (La.1982). Proof by a preponderance of the evidence means that, taking the evidence as a whole, such proof shows that a fact sought to be proved is more probable than not. Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366, 369 (La.App. 2d Cir.1988). When a party fails to carry his burden of proof, there is no necessity for the opposing party to rebut insufficient evidence. Harvill v. Casey, 461 So.2d 373 (La.App. 2d Cir.1984), writ denied, 464 So.2d 318 (La.1985).
611 So.2d at 829.
The question on appeal, then, is whether the trial court erred in concluding that the plaintiffs have shown no right to relief in their claims against Morris, the pest control operator, and against the Ducotes, the vendors of the home.

LIABILITY OF MORRIS
The trial court found that the plaintiffs failed to prove any misrepresentation or negligence by Morris. After reviewing the evidence presented by the plaintiffs, we must disagree.
The plaintiffs have shown that Morris failed to inspect the property on the dates represented in the reports and further failed to note known areas of damage. Morris explained that he did not think an inspection was necessary because he had treated the home two months before he issued the first report and he assumed his treatment was effective. He also stated that he did not list the areas of known damage on the reports *1247 because he had already supplied Mrs. Ducote with that information in the "graph" that was attached to the contract form. Morris admitted, however, that he was aware that both purchasers and lenders also rely on the "wood destroying insect reports," and that the inspection reports are rarely accompanied by contracts or graphs.
Recently, our Supreme Court held that a pest control operator owes the purchaser of a home a duty of reasonable care, competence or skill in ascertaining and/or communicating facts in a termite inspection report, even though the purchasers are not a party to the contract and have had no direct or indirect contact with the inspector. Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007 (La.1993). At least two Louisiana appellate courts had recognized such a duty before Barrie was decided. In Payne v. O'Quinn, 565 So.2d 1049 (La.App. 3d Cir. 1990), this circuit found that a termite inspector was liable to the purchasers of a home for making material omissions in an inspection report. In Caple v. Green, 545 So.2d 1222 (La.App. 2d Cir.1989), the Second Circuit reviewed a form that appears to be identical to the two in the instant case and concluded, "The form thus clearly reflects duties beyond only reporting active infestation."
Morris did report evidence of active infestation that was treated, but he failed to report the known, visible damage caused by the infestation, as required on the report. When asked why he did not complete the sections concerning damage, as opposed to infestation, Morris candidly replied, "I overlooked the one right there, sir."
The inspection report prepared by Morris was inaccurate and misleading. We have little trouble concluding that Morris' conduct fell below the standard of care owed to the Brouillettes. Our next question is whether this conduct was the cause in fact of the plaintiffs' harm.
Scott and Stacey Brouillette, age 22 and 23, respectively, were first-time home buyers. They were presented with the November 25, 1991 certificate which they signed before the sale. Based on the report prepared by Morris, the Brouillettes were entitled to conclude that they were purchasing a home that had been treated for termites but which had no visible damage to its structure. This clearly was not the case, as the evidence of visible damage was known to both Morris and to Mrs. Ducote. Had this report accurately depicted the areas of visible damage, the Brouillettes would have been provided with enough information to warrant their own investigation of the home's condition. The Brouillettes both testified that had they known the true condition of the house they would not have purchased it. We find that the trial judge erred in granting an involuntary dismissal as to the plaintiffs' tort claim against Morris. Therefore, this claim must be remanded to the trial court for presentation of any rebuttal evidence or defenses that Morris may raise.
We now turn to the Brouillettes' claim in contract against Morris. The pest control contract between Morris and Mrs. Ducote guaranteed Morris' treatment for native subterranean termites for one year. Morris testified that the contract was still in effect after the sale of the home to the Brouillettes. When contacted by the Brouillettes in April of 1992, Morris re-treated the home at their request. Morris' treatment was designed to prevent termites from reentering the home from the ground. When the plaintiffs' expert, James Arceneaux, inspected the home in 1993, he saw no evidence of termite entry from the ground and concluded that, in this respect, Morris' treatment had been effective. The plaintiffs have not shown that Morris negligently treated the home or that he failed to re-treat the home at their request. Accordingly, we find no error in the trial court's dismissal of the Brouillettes' claim in contract against Morris.

LIABILITY OF THE VENDORS
The trial court dismissed the Brouillettes' claim in redhibition or quanti minoris against the vendors, finding first that the termite inspection report should have alerted the plaintiffs to the possibility of extensive damage and second that the plaintiffs failed to prove the infestation of March or April of 1992 existed at the time of the sale in December of 1991.
*1248 The Civil Code articles governing the Brouillettes' claims against the vendors are reproduced as follows:
Art. 2520. Redhibition, definition

Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
Art. 2521. Apparent defects discoverable by buyer
Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.
Art. 2522. Latent defects made known to buyer
The buyer can not institute the redhibitory action, on account of the latent defects which the seller has declared to him before or at the time of the sale. Testimonial proof of this declaration may be received.
Art. 2530. Proof of existence of vice before sale
The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale.
Art. 2531. Liability of seller in good faith for restitution of price
The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, of if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it. (Second paragraph omitted.)
Art. 2545. Liability of seller for concealment of vice
The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages.
Art. 2541. Reduction of price for vices warranting redhibition
Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price.
The simple inspection required by art. 2521 is one made by a reasonably prudent buyer, with no special knowledge, and under no obligation to deface the thing purchased while inspecting it. See Pursell v. Kelly, 244 La. 323, 152 So.2d 36, 41 (1963), where the Supreme Court stated that the test for this issue is "whether a reasonably prudent buyer acting under similar circumstances, would have discovered the presence of termite damages in the premises."
The Brouillettes testified that the only damage they observed upon taking possession of the home were some discolored ceiling tiles in the bathroom and a small hole in the ceiling in the dining area. They testified that Mrs. Ducote told them she punctured the ceiling tile in the dining room with a broomstick while cleaning some cobwebs. The Brouillettes were not required to inspect the home with the expertise of a pest control professional such as Morris, and any evidence of damage ascertained by Morris because of his expertise cannot be attributed to them. See Fraser v. Ameling, 277 So.2d 633 (La.1973), and Thompson v. Klein, 188 So.2d 180 (La.App. 4th Cir.1966).
We have already discussed the inadequacies in the inspection report prepared by Morris. That document alerts the purchasers only to infestation that had been treated with proper control measures. It fails to list the areas of visible termite damage that were known to Morris and to the vendor. We cannot conclude that discolored ceiling tiles or the inaccurate inspection report was sufficient to put plaintiffs on notice of extensive termite damage and infestation. The information that would have linked the discolored ceiling tiles to termite damage was deliberately *1249 withheld from the purchasers by Mrs. Ducote and was negligently omitted from the inspection report by Morris.
We also disagree with the trial court's conclusion that the Brouillettes failed to prove that termite infestation existed at the time of the sale. James Arceneaux's expert testimony on this point was unrebutted and was consistent with the extent of the damage discovered.
We find that the Brouillettes have proved that a redhibitory defecttermite infestation and damageexisted at the time of the sale. Because the plaintiffs are not charged with expertise in pest control and because essential information was withheld from them, we find the defect was not discoverable by simple inspection. The plaintiffs have also proved that at least one vendor and co-owner, Mrs. Ducote, was aware of the defect and failed to disclose it prior to the sale.
The plaintiffs argue that they have proved entitlement to rescission of the sale, as opposed to a reduction in price. We disagree. The plaintiffs' construction expert, Brent Scallan, testified that the termite damage could be repaired for $3,646. Their pest control expert, James Arceneaux, described the damage as extensive, but it did not amount to a "complete eat-out." The cost of repair does exceed 10% of the purchase price of $32,000, but at the time of the sale, the home was valued much higher at $45,000. We find the trial judge erred in granting an involuntary dismissal as to the plaintiffs' claim in quanti minoris against the vendors. Accordingly, this claim is also remanded to the trial court for the presentation of defense and rebuttal evidence.

DECREE
For the above reasons, the judgment of the trial court is affirmed insofar as it dismisses the plaintiffs' claim in contract against Emanuel Morris and the plaintiffs' claim in redhibition against the vendors, Maxwell Bordelon, as administrator of the succession of Bernice Ducote, Pamela Ducote Ruemker, Mary Ducote Daigrepont and Paula Ducote Parenton. The judgment is reversed insofar as it dismisses the plaintiffs' claim in tort against Morris and in quanti minoris against the vendors. The case is remanded for further proceedings not inconsistent with this opinion. Costs of this appeal are assessed to all appellees.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.