729 So.2d 703 (1999)
Michael CROW and his Wife, Michelle Crow
v.
Steven LAURIE and his Wife, Tamara Laurie.
No. 98 CA 0648.
Court of Appeal of Louisiana, First Circuit.
February 19, 1999.
*705 Jeffrey M. Seaver, Sr., Tracy S. Pickerell, Baton Rouge, Louisiana, for Plaintiffs/Appellants Michael Crow and his wife, Michelle Crow.
Gary C. Mooney, Baton Rouge, Louisiana, for Defendants/Appellees Steven Laurie and his wife, Tamara Laurie.
BEFORE: SHORTESS, LeBLANC and GONZALES, JJ.
GONZALES, J.
In this appeal, the purchasers of a used boat challenge a trial court judgment dismissing their suit in redhibition against the sellers of the boat.

FACTUAL AND PROCEDURAL HISTORY
On April 17, 1995, Michael and Michelle Crow purchased a 17-foot 1976 Hydrosport boat, a 115-horsepower 1976 Johnson outboard motor, and a 1976 Cobra boat trailer from Steven and Tamara Laurie for $2,500.00. After the Crows used the boat once, Mr. Crow was informed by a friend that the transom of the boat had a crack in it which had been filled with silicon and perhaps Mr. Crow should have the boat checked. Mr. Crow took the boat to a repair shop, where it was discovered that the boat's transom, or the wooden planking forming the stern of the boat under the outer layer of fiberglass, was rotten. Mr. Crow was advised not to use the boat again.
By letter delivered to Mr. Laurie on June 30, 1995, Mr. Crow outlined various alleged defects which had been discovered, including the rotten transom, and tendered the boat and trailer to Mr. Laurie for "full and complete repair or refund of the purchase price" as well as subsequent repair costs which Mr. Crow incurred. Upon the Lauries' failure to respond to Mr. Crow's letter, the Crows filed suit against the Lauries on July 28, 1995.[1]
On November 14, 1997, a bench trial was held. At the end of the trial, the trial court ruled in favor of the Lauries. According to the trial court, "when you buy something that's nineteen years old, particularly a boat, motor and trailer, that you purchase it subject to an inspection that you need to do." On December 2, 1997, the trial court signed a judgment dismissing the Crows' claims. The Crows appeal from this adverse judgment, contending the trial court erred in concluding that they had a "heightened duty of inspection" as purchasers of an old boat.

REDHIBITION
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice. La.C.C. art. 2520. In a suit for redhibition, the plaintiff must prove: 1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, judged by the reasonable person standard, had he known of the defect, he would never have purchased it; 2) the thing contained a non-apparent defect at the time of sale; and 3) the seller was given an opportunity to *706 repair the defect.[2]Fly v. Allstar Ford Lincoln Mercury, Inc., 95-1216 (La.App. 1 Cir. 8/21/96), 690 So.2d 759, 761.
The warranty created against redhibitory defects applies to the sale of used equipment, but it is not as extensive as in the sale of new equipment. However, what is required is that the equipment must operate reasonably well for a reasonable period of time. Ross v. Premier Imports, 96-2577 (La. App. 1 Cir. 11/7/97), 704 So.2d 17, 21, writ denied, 97-3035 (La.2/13/98), 709 So.2d 750. Therefore, obviously the sale of an older boat does not carry the same warranty as does the sale of a new one. Inherent in the sale of an older boat is the knowledge that the machinery and parts are worn and subject to breakdown and that the vessel will require mechanical work from time to time to keep it in good running condition. See Burch v. Durham Pontiac Cadillac, Inc., 564 So.2d 380, 382-383 (La.App. 1 Cir.), writ denied, 569 So.2d 968 (La.1990).
The avoidance of a sale as a remedy for defects in a product is a factual question, the resolution of which is best left to the trier of fact. Vincent v. Hyundai Corporation, 633 So.2d 240, 243 (La.App. 1 Cir.1993), writ denied, 93-3118 (La.2/11/94), 634 So.2d 832. A court of appeal may not set aside a factfinder's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Before an appellate court may reverse a fact-finder's determinations, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong (manifestly erroneous). Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).

EVIDENCE PRESENTED AT TRIAL
In support of their redhibition claim, the Crows presented the testimony of William P. Caudill, Jr., the owner of Caudill's Boat Repair, who discovered the rotten transom in the Crows' boat. According to Mr. Caudill, who was accepted by the trial court as an expert in boat repair, the transom of the Crows' boat was significantly rotted. He testified that, if the motor were trimmed down so that it rested against the transom, and then were pushed against the transom, the mounting brackets of the motor would go right through the fiberglass due to the rotten wood behind it. He advised Mr. Crow not to use the boat, and not even to pull the boat behind a vehicle, because there was a chance that the movement of the motor, which he estimated to weigh 275-280 pounds, would cause it to simply tear out and possibly fall back and underneath the boat so that only the controls of the boat would be holding up the motor. Mr. Caudill also testified that an average person would not be able to detect the rotten transom because it is not visible and "you would have to know what you are looking for." In his opinion, the boat was worthless because the repair of the rotten transom would "cost an arm and a leg, and it is just not worth it because they will never get their money back out of it."
Mr. Crow also testified at the trial. He stated that, although he had never owned or driven a boat before, he became interested in buying a boat so he could take his family fishing. His wife, Michelle, told him that the Lauries, who lived near them, had a boat for sale. The Crows had known the Lauries for several years because Mrs. Laurie provided day care services for the Crows' two children. Mr. Crow looked at the boat on two occasions before buying it. Prior to the sale, Mr. Laurie started and ran the motor in Mr. Crow's presence and told him the boat was in "water ready" condition, but that the trailer lights would have to be rewired, the live well would have to be unplugged, and that some gauges would have to be reconnected. However, according to the demand letter written by Mr. Crow after the sale, he spent over $200.00 repairing the boat, including replacement of dash gauges, live well hoses, and an aerator.
Mr. Crow testified that, on the one occasion when he ran the boat on a waterway, he *707 got less than one mile from the marina, stopped to fish, and was unable to get the motor to crank again. The boat had to be towed back to land. It was after this single outing with the boat that a friend of Mr. Crow's noticed the crack in the transom which had been filled with silicon and suggested that Mr. Crow have the boat checked. This suggestion led to Mr. Caudill's subsequent inspection of the boat and discovery of the rotten transom.
Mr. Laurie's testimony was also presented at trial. He stated that his father purchased the 1976 Hydrosport boat brand new and had it until his death in 1994. During the time his father owned the boat, Mr. Laurie used it once or twice a year. After his father's death, Mr. Laurie acquired the boat, motor, and trailer from his mother and used them only once before selling them to the Crows in April of 1995. During his ownership, Mr. Laurie rewired the lights and put a new tire on the trailer; however, he did not have the boat checked or repaired at a repair shop and, specifically, did not have any fiberglass work done to hide cracks in the boat. Before selling the boat, motor, and trailer to the Crows, Mr. Laurie told Mr. Crow the trailer lights required repair and gave him a repair kit, that the gauges needed to be redone, that his father had cut the line to the live well and stopped it up for use as storage space, and that the running lights needed to be redone.
Mr. Laurie admitted receipt of Mr. Crow's demand letter, requesting repair of the boat or refund of the purchase price and certain repair costs. In response, Mr. Laurie contacted his lawyer, but did not personally discuss the matter with Mr. Crow.

REVIEW OF TRIAL COURT'S JUDGMENT
At the conclusion of the trial, the trial court noted that the primary problem with the boat was the rotten transom. We agree with this assessment and find that the rotten transom constituted a defect that rendered the boat useless for its intended purpose. Mr. Caudill's testimony established that the boat could not be used with a rotten transom due to the risk that the motor would simply tear out. Despite their presumed inherent knowledge that the used boat contained worn parts and was subject to breakdown (such as intermittent engine failure), see Burch, 564 So.2d at 382-383, it must be supposed that had the Crows known that the motor could tear away from the rotten transom during normal use of the boat in water, and even when it was merely being pulled behind a vehicle, they would not have purchased it. See Hob's Refrigeration and Air Conditioning, Inc. v. Poche, 304 So.2d 326, 328 (La. 1974).
We must next determine whether the trial court erred by concluding that the Crows were not entitled to rescission because they failed to properly inspect the boat before purchasing it. Although the trial court noted that "the age of a boat doesn't necessarily indicate anything about the condition of the boat," it went on to conclude that, because the boat was 18 years old, the Crows should have "inspected" it before buying it.
The trial court was correct in noting that the Crows were required to inspect the boat before purchasing it. Apparent defects, which the buyer can discover through a simple inspection, are excluded from the seller's legal warranty. La.C.C. art. 2521; Amend v. McCabe, 95-0316 (La.12/1/95); 664 So.2d 1183, 1188. To determine whether the defect is apparent, one must consider whether a reasonably prudent buyer, acting under similar circumstances, would discover it through a simple inspection of the object. A simple inspection is more than a casual observance; it is an examination of the object by the buyer with a view of ascertaining its soundness. Pursell v. Kelly, 244 La. 323, 152 So.2d 36, 41 (1963); Amend, 664 So.2d at 1188. However, a simple inspection does not require the buyer to examine the inner or hidden parts of the object to find latent defects, or that he deface the thing while inspecting it. Pursell, 152 So.2d at 41; Landaiche v. Supreme Chevrolet, Inc., 602 So.2d 1127, 1131 (La.App. 1 Cir.1992). Further, there is no requirement that the inspection performed by potential buyers of a used object be more burdensome than the inspection performed by potential buyers of new objects. Whether an inspection is reasonable *708 depends upon the facts of each case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances made by the seller. Landaiche, 602 So.2d at 1131.
We conclude that the rotten transom is not a defect which would have been discovered by a simple inspection. Mr. Caudill's testimony established that a rotten transom on a boat, such as the one at issue, would not be detected by an average person because such a defect is not visible, but is hidden underneath a top layer of fiberglass. Having never owned a boat, Mr. Crow had no superior knowledge or expertise which would have prompted him to detect the hidden defect. Further, even had Mr. Crow noticed the silicon-filled crack which eventually led to the discovery of the rotten transom while he was inspecting the boat, this would not necessarily put a reasonably prudent buyer on notice of the existence of rotten wood under the fiberglass surface of the boat. See Buck v. Adams, 446 So.2d 895, 899 (La.App. 1 Cir. 1984) (finding that the purchaser of a boat had no special knowledge or expertise about wood-bottom boats which would have made him aware that worm infestation rendered a boat unseaworthy). As noted, a "simple inspection" does not require the buyer to examine inner parts of the object or that he deface the thing while inspecting it. Mr. Crow would have had to pull away at the cracked edges of the fiberglass to determine why the crack had been filled with silicon. We find the Crows' duty to perform a simple inspection did not include this type of invasive scrutiny. Thus, although the trial court correctly determined the Crows were required to inspect the boat, it committed legal error by imposing upon the Crows a duty to perform a more extensive inspection than a "simple inspection" merely because the boat was 19 years old.
Therefore, we hold that the rotten transom constituted a latent, redhibitory defect in the boat which rendered the boat useless and that the defect existed at the time of the sale. We further hold that the Crows would not have purchased the boat had they known the transom was rotten, that the Lauries were given the opportunity to repair the boat and did not do so, and that the Crows are entitled to rescission of the sale.

MEASURE OF DAMAGES
Once it has been determined that rescission is the proper remedy for the sale of a defective thing, the measure of damages must be fixed. A seller who did not know that the thing he sold had a defect is bound only to repair, remedy, or correct the defect. If he is unable or fails to do so, he is then bound to return the price to the buyer with interest from the time it was paid, and to reimburse the buyer for the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, less a credit to which the seller is entitled if the use made of the thing, or the fruits it has yielded, were of some value to the buyer. La.C.C. art. 2531.
There is no proof in the record to establish the Lauries were aware the transom in the boat was rotten. Mr. Laurie testified that, although he made minor repairs to the boat trailer, he did not take the boat itself to any boat dealer or repair shop for inspection or repair during his ownership. There is also no proof in the record indicating Mrs. Laurie was aware of the rotten transom. Thus, as good faith sellers, the Lauries, who have already declined the opportunity to repair the boat, are only bound to return the price paid by the Crows and to reimburse them for reasonable expenses occasioned by the sale and those incurred for the preservation of the thing.[3] The plaintiff in a redhibition action is required to prove the amount to which he is entitled by a preponderance of the evidence. Landaiche, 602 So.2d at 1132.
There is no evidence in the record to establish that the Crows incurred any expenses occasioned by the sale, which are only immediate expenses occasioned by the contract of sale itself. Scully v. Campo, 270 *709 So.2d 267 (La.App. 4 Cir.1972). Further, although Mr. Crow testified that he spent approximately $400.00 repairing the boat prior to discovery of the rotten transom, these repairs were not necessary to repair the defect for which rescission is being granted. A purchaser may not recover for repairs which encompass work for more than what is necessary to repair the defects and make the structure sound. Creger v. Robertson, 542 So.2d 1090, 1098 (La.App. 2 Cir.1989); see also Neal v. Saizan, 486 So.2d 832 (La.App. 1 Cir.1986). Additionally, there is insufficient evidence to establish that these expenses were incurred for "preservation" of the boat. Thus, we find that the Crows are not entitled to reimbursement of these expenses.

DECREE
For the foregoing reasons, the judgment of the trial court, dismissing the Crows' redhibition claim against the Lauries is REVERSED. Judgment is RENDERED in favor of the Crows and against the Lauries for the purchase price of the boat, $2,500.00, plus interest from the date the Lauries received the purchase price from the Crows. All costs of trial and appeal are assessed to the Lauries.
NOTES
[1] The Lauries answered the Crows' lawsuit and filed a reconventional demand seeking damages for mental anguish and loss of earnings by Mr. Laurie allegedly caused by the fact that the Crows filed this lawsuit against them. The reconventional demand was dismissed by the same judgment dismissing the Crows' claims on the main demand.
[2] It is undisputed that Mr. Crow requested that Mr. Laurie repair the defective boat and that the opportunity to do so was declined by Mr. Laurie. Therefore, the Crows' burden of proof regarding this aspect of their redhibition claim was met and is not at issue in this appeal.
[3] The record contains no evidence proving the Lauries are entitled to a credit for the value of the Crows' one-time use of the boat.