565 So.2d 1049 (1990)
Joe Beck PAYNE, Plaintiff-Appellant,
v.
Mary Lou O'QUINN, et al., Defendants-Appellees.
No. 89-127.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1990.
*1050 R. Stuart Wright, Natchitoches, for plaintiff-appellant.
Gahagan & Gahagan, Russell E. Gahagan, Monty L. Doggett, Natchitoches, for defendants-appellees.
Before DOMENGEAUX, C.J., and GUIDRY and KNOLL, JJ.
KNOLL, Judge.
Joe Beck Payne appeals the judgment of the trial court, rejecting his demands against the vendors of a home and a local pest control company for the cost of repair attributable to termite damage to his recently purchased home.
Payne contends that the trial court erred in: (1) not ordering a reduction in the sale price; and (2) finding the pest control company not liable for its erroneous termite inspection. We reverse and render judgment in favor of Joe Beck Payne.

FACTS
On July 29, 1987, Joe Beck Payne purchased a wood frame house and property from Mary Lou O'Quinn,[1] her children and grandchildren.[2] As part of the real estate transaction, Faris Michael, the real estate broker who represented both Payne and Mary Lou O'Quinn in the sale, contacted Raymond Slaughter of Cane River Pest Control (Cane River) to examine the home for termite damage and infestation. On July 14, 1987, two weeks before the sale, Slaughter delivered his report on wood infestation to Michael. After performing a cursory examination of the house, Slaughter concluded that there was "old termite sign [sic] in front section of houseHas been treated in the past. Two sets of wooden steps are on the ground (Foundation is in good shape)". Sometime before the actual sale, Michael communicated the findings to Payne. Payne, who saw no signs of termite damage when he visited the house only a few weeks earlier, expected that the house needed some minor repairs, but did not believe that extensive work was necessary.
After the act of sale was passed, Payne allowed Mary Lou O'Quinn to remain in the home for three weeks. After she removed all her furniture and moved out of the home, Payne went to the home with a friend. As they entered the front bedroom, Payne's friend almost fell through the carpeted floor because of termite damage. A closer examination of the house (without furniture concealing any areas) revealed numerous areas of termite damage to several rooms.
Payne hired Michael Martin, a local building contractor, to ascertain the true extent of termite damage and to estimate the cost of repair. Martin found extensive structural damage to the front portion of the house. Costs of replacing several joists, sills, and studs,[3] and repairing several interior walls amounted to $5,476.80. All of the termite damage was old and no live termites were found.
*1051 Payne filed suit against the vendors for reduction of the purchase price, and against Cane River for its alleged inadequate inspection and erroneous report. Payne also sought attorney's fees. After a trial on the merits, the trial court determined that Payne was not a reasonably prudent buyer because it was incumbent upon him, after receiving the report of prior termite damage, to investigate further to determine the true extent of the termite damage. Accordingly, the trial court rendered judgment in favor of the vendors and Cane River, rejecting Payne's demands.

QUANTI MINORIS
Payne's first assignment of error is that the trial court erred in not concluding that the vendors are liable because of the latent termite damage.
The relevant code articles to Payne's quanti minoris action against the vendors are:
Art. 2520. Redhibition, definition
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
Art. 2521. Apparent defects discoverable by buyer
"Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."
Art. 2541. Reduction of price for vices warranting redhibition
"Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price."
Art. 2542. Reduction of price for defect in quality
"The buyer may also content himself with resorting to this action, when the quality, which the thing sold has been declared to possess and which it is found to want, is not of such importance as to induce him to demand a redhibition."
Art. 2543. Redhibition and reduction as alternative demands
"The purchaser who has contended himself with demanding a reduction of the price, can not afterwards maintain the redhibitory action."
But in a redhibitory suit, the judge may decree merely a reduction of the price." Art. 2544. Rules governing action for reduction of price
"The action for a reduction of price is subject to the same rules and to the same limitations as the redhibitory action."
Art. 2545. Liability of seller for concealment of vice
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages."
In rejecting Payne's claim for a reduction in the purchase price, the trial court ruled that Payne was not a reasonably prudent buyer and it was his duty, once the termite inspector found old termite damage, to further inspect the home.
Simple inspection is one made by a reasonably prudent buyer, with no special knowledge, and under no obligation to deface the thing purchased while inspecting it. Pursell v. Kelly, 244 La. 323, 152 So.2d 36, 41 (1963); Barker v. Tangi Exterminating Co., 448 So.2d 690, 692 (La.App. 1st Cir.1984), writ denied, 452 So.2d 171 (La. 1984). The test enunciated for this precise issue in Pursell, supra 152 So.2d at 41, is "whether a reasonably prudent buyer acting under similar circumstances, would have discovered the presence of termite damage in the premises."
In Barker, our brethren of the First Circuit were confronted with circumstances almost identical to the facts of the case sub judice. In that case, defendants, Phillip and Bonnie Jenkins, sold their home to plaintiffs, Leo and Alma Barker. Prior to the purchase of the house, the Barkers visited the house twice and observed no *1052 termite damage. The Jenkins obtained a termite infestation report which showed there was no evidence of termite infestation or damage. However, when they took possession 30 days after the sale, the plaintiffs discovered signs of termite damage in places previously concealed by furniture. Subsequent investigation revealed more extensive damage to the baseboards and walls. In affirming the trial court judgment in favor of a reduction in price, the appellate court noted:
"The most substantial damage to this house was not discoverable upon simple inspection. It was not until the sheetrock and baseboards were removed that the full extent of damage could be seen. There was some sawdust around parts of the baseboard that would perhaps have put the plaintiff on notice to investigate further; however, testimony indicated that at the time of the plaintiff's inspection of the house, the Jenkins' furniture concealed these baseboards. The real estate agent who accompanied the Barkers on two occasions testified that she did not see any signs of termite damage." Id. at 692.
In the case sub judice, the evidence preponderates that the termite damage was a latent defect that was not discoverable by simple inspection. At trial, Mary Lou O'Quinn testified that she lived in the house for 25 years and had exterminators treat the house in 1964, 1980 and 1986. Although she denied any knowledge of termite infestation and damage, Noble Flenniken, an exterminator with 34 years experience, testified that in 1983 he treated the house for termite infestation and damage. In 1983, Flenniken found termite damage around the chimney, in the east bedroom and around the false chimney. Although he could not recall telling Mrs. O'Quinn specifically about the termite damage in 1983, he testified that anytime termite damage is discovered, the homeowner is notified.
In addition, Payne testified that he inspected the house prior to the sale and saw no signs of termite damage. It was not until the furniture and the carpeting were removed that plaintiff discovered the termite damage from a Dearoom floor where a bed was previously situated.
Moreover, Martin, the building contractor, testified that from a visual examination it was not possible to determine termite damage to the sills and joists underneath the house. After Martin crawled beneath the house, he found that the front part, particularly the front bedroom, had extensive termite damage; a sill and numerous floor joists had to be replaced, and several studs in the walls were also damaged by termites. In addition, Slaughter, the employee of Cane River, admitted that he mistakenly missed the termite damage to the foundation, and did not see the termite damage in the interior of the house.
Based on this evidence, we conclude that the trial court was manifestly erroneous in determining that Payne should have discovered the true extent of the termite damage to the house structure by simple inspection. In reaching this conclusion, we found no testimony of record where Mrs. O'Quinn apprised Payne of the prior termite treatments. It is clear that in light of the prior termite infestations, the vendors were not relying upon Slaughter's termite inspection and cannot shield themselves from liability on the basis of that report. Cf. Tangi, supra at 692. Moreover, we do not fault Payne for failing to further inspect the house after he received the termite inspection report; the only conclusion Payne could draw from the report was that the foundation was in good shape and, as stated by Slaughter in his report, "No visible evidence of infestation from wood destroying insects was observed". Therefore, we reverse the trial court's decision, which rejected Payne's demands against Mary Lou O'Quinn and the other vendors.

CANE RIVER'S LIABILITY
Payne also contends that the trial court erroneously rejected his claim against Cane River for making an erroneous and incomplete termite infestation report. He argues that the information Cane River provided in its report was inadequate and incorrect. Cane River counters in brief by *1053 asserting that Payne should have seen the termite damage and should have obtained a building contractor to examine the old termite damage which was pointed out in the infestation report.
Our first task is to identify the legal basis for Payne's claim against Cane River. Does Cane River's liability arise ex contratu or ex delicto ? For the following reasons, we find delictual liability against Cane River. First, there is a paucity of facts in the appellate record which can be relied upon to establish a contractual relationship. In fact, we are only able to discern that Michael, the realtor, acted on behalf of Payne and the vendors in securing the infestation report, and that one of the parties, the record does not disclose which, paid for the report. Secondly, the jurisprudence generally discusses the exterminator's liability in terms of an ongoing contractual relationship to the homeowner. In the case sub judice, Payne was not the homeowner at the time the infestation report was made, and there had not been an ongoing contractual relationship to provide termite treatment through the years between Cane River and the vendors. Compare Higdon v. Orkin Exterminating Co., Inc., 412 So.2d 720 (La.App. 3rd Cir. 1982), writ denied, 416 So.2d 117 (La.1982); and Maguire v. Masino, 325 So.2d 844 (La. App. 4th Cir.1975). On the contrary, Cane River was asked to give a one-time termite infestation report on the subject property for the purposes of the sale from the vendors to Payne.
In the seminal case of Devore v. Hobart Mfg. Co., 367 So.2d 836, 839 (La.1979), our Supreme Court recognized that LSA-C.C. Arts. 2315 and 2316 afford a broad ambit of protection for persons negligently damaged by the acts of others sufficient to encompass a cause of action for negligent misrepresentation. Expounding on the pronouncement in Devore, our appellate courts have determined that in order for the doctrine of negligent misrepresentation to apply: there must be a duty owed on the part of the defendant to supply correct information; there must be a breach of that duty; and, the breach of the duty owed must have caused damage to plaintiff. Beal v. Lomas and Nettleton Co., 410 So.2d 318 (La.App. 4th Cir.1982); Josephs v. Austin, 420 So.2d 1181 (La.App. 5th Cir.1982), writ denied, 427 So.2d 870 (La.1983); Cypress Oilfield Contr. v. McGoldrick Oil, 525 So.2d 1157 (La.App. 3rd Cir.1988), writ denied, 530 So.2d 570 (La.1988). As pointed out in Cypress Oilfield Contr., our determination of defendant's tort liability must be ascertained by application of the now familiar duty-risk analysis.
Was Cane River's conduct in question a cause in fact of the resulting harm? The evidence was undisputed that termite infestation is a common problem in the Natchitoches area, particularly in older structures. Because of this problem and the age of the wood frame home involved, the realtor obtained Cane River's services to provide a termite infestation report. Slaughter, Cane River's inspector, testified that when he performs a termite inspection and prepares a wood infestation report, he does primarily two things. First, he examines the structure for active infestation of any wood destroying insects such as termites. Secondly, he examines the structure for any wood damage resulting from prior wood destroying insect infestations. Only the latter element has bearing on the present case.
As explained hereinabove, Payne testified that he did not see any termite damage when he examined the interior of the house prior to Mrs. O'Quinn's departure. Moreover, Payne testified that he read Cane River's report and relied upon its representations that the foundational structure of the house was in good shape, despite signs of old termite infestation. More importantly, because of the favorable report, Payne stated that he did not investigate further. Accordingly, we find that Cane River's conduct was a cause in fact of Payne's harm.
Whether a duty exists is a question of law. Cypress Oilfield Contr., supra. As stated earlier, the Devore court concluded that LSA-C.C. Arts. 2315 and 2316 encompass a cause of action for negligent misrepresentation. The major issue in this area as it applies to the case sub judice is *1054 whether Cane River's duty fell within the ambit of the duty owed to Payne, a person with whom it did not directly contract.
As explained in Cypress Oilfield Contr., the Louisiana appellate court cases which have upheld awards based upon negligent misrepresentation have involved existing fiduciary relationships between the plaintiff and defendant. Beal, supra (insurerinsured); Josephs, supra (realtorpurchaser); and Dohmann v. United Gas Pipe Line, 457 So.2d 307 (La.App. 3rd Cir. 1984) (credit unioncredit union member).
The first appellate court decision to extend that duty to a third party was our decision in Cypress Oilfield Contr., supra. In that case, another panel of this court stated at page 1162:
"In the case at bar McGoldrick apparently had no previous dealings with FAB. The sole nexus between the two parties at the time the letter was written was McGoldrick's obligation on a contract invoice assignedpledged to FAB. FAB owed no duty to McGoldrick to furnish it any information regarding GDL's financial condition. However, when FAB stated clearly that the financial stability of GDL was not in jeopardy it assumed a duty to insure that the information volunteered was correct. FAB assured a third party with whom it was dealing that one of its commercial customers to whom it had extended credit was financially stable when it was actually insolvent. To allow a financial institution to make such a misrepresentation and not hold it responsible for the resulting harm would be to ignore basic principles of law contained in our civil code.
The duty assumed by FAB to insure that such information volunteered was correct encompassed the risk that McGoldrick would rely on the misrepresentation and suffer the damages it sustainedpaying the insolvent contractor through its assignee/pledgee and subjecting it to double liability. FAB breached that duty...."
We find the same reasoning applicable herein. Cane River's involvement in this business transaction was through a real estate broker. In Cane River's report, Slaughter, its inspector, noted no visible evidence of damage. Only as an additional comment did he note that there were old signs of termites. Moreover, despite other language on the report which stated that the report was not a structural damage report, Cane River's inspector voluntarily stated that the house's foundation was in good shape. Furthermore, Cane River's inspector failed to limit the report to only accessible areas and further failed to recommend, as provided on the printed report, that a building expert should examine the damaged areas if old damage was found.
Cane River assumed a duty to insure that the information it provided as part of its stated obligation, as well as that which it volunteered to provide, was correct. Furthermore, that duty encompassed the risk that a prospective purchaser (Payne) would rely upon the misrepresentation provided the realtor, and suffer the damages sustained. Cane River's inspector admitted his omissions on the report, and agreed that since he was not properly qualified, he should not have opined that the foundation was in good shape. Accordingly, we find that Cane River owed a duty to Payne, and breached that duty not only when it made material omissions from the report, but also when it negligently misrepresented the structural integrity of the house.[4] Therefore, we find that the trial court was manifestly erroneous in failing to find Cane River liable to Payne.

DAMAGES
It was undisputed that Payne expended $5,467.80 in repairing the old termite damage to the house. Accordingly, we find that he is entitled to a reduction of price in that amount. Likewise, since Cane River's report caused Payne not to make further investigation of the premises prior to purchasing, which precluded him from *1055 uncovering the extent of the damages, we find Cane River liable in solido with the vendors for the amount of the repairs.
For the foregoing reasons, the judgment of the trial court denying Payne's demands against the vendors and Cane River is reversed and set aside.
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of Joe Beck Payne and against Mary Lou O'Quinn, Jackie O'Quinn Flynt, Merry Jo O'Quinn Grayson, Louis L. O'Quinn, Myrtis O'Quinn Parish Hernendez, David Lynn O'Quinn, Duane R. Hale, Mark Dale Hale, Rebecca Dale Treadway, Denise Fay Hale Smith, Randal B. O'Quinn and Cane River Pest Control, Inc., in solido, in the amount of $5,476.80 together with legal interest from date of judicial demand until paid. Costs of trial and this appeal are assessed one half to the vendors and one half to Cane River.
REVERSED AND RENDERED.
NOTES
[1] In correspondence to this court, counsel has advised us that Mary Lou O'Quinn has recently died. Since there is not a scintilla of evidence in the record as to whether she has died and if so, when, it will not be considered. Wallace v. Pan American Fire & Cas. Co., 352 So.2d 1048, 1054 (La.App. 3rd Cir.1977), writ denied, 354 So.2d 209 (La.1978).
[2] The vendors/defendants in this action are Mary Lou O'Quinn, Jackie O'Quinn Flynt, Merry Jo O'Quinn Grayson, Louis L. O'Quinn, Myrtis O'Quinn Parish Hernendez, David Lynn O'Quinn, Duane R. Hale, Mark Dale Hale, Rebecca Hale Treadway, Denise Fay Hale Smith and Randal B. O'Quinn.
[3] A joist is a parallel timber that supports the planks of a floor or the laths of a ceiling. A sill is a piece of timber on which a structure rests. A stud is the upright support in the framework of a house to which horizontal boards or laths of a ceiling are nailed.
[4] Cane River did not raise Payne's degree of fault in its answer, and the pleadings were not enlarged at trial to encompass such. At the same time, we note that the vendors neither third-partied Cane River nor the realtor. Accordingly, these issues are not before us.