645 So.2d 674 (1994)
Anne DOSKEY, Wife of/and Dwight Doskey
v.
Dawn M. HEBERT, Spencer Pest Control, Inc., Terminix Service Co., and St. Paul Fire & Marine Insurance Co. and XYZ Insurance Company.
No. 93-CA-1564.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1994.
Rehearing Denied December 13, 1994.
*676 Dwight Doskey, New Orleans, for plaintiffs.
James B. Irwin, Montgomery, Barnett, Brown, Read Hammond & Mintz, Elizabeth O. Clinton, Bastian, Brooks & Wynne, Jerald L. Album, Suzanne M. Ganucheau, Abbott & Meeks, New Orleans, for defendants.
Before CIACCIO, LOBRANO and ARMSTRONG, JJ.
CIACCIO, Judge.
This appeal involves a suit filed in March of 1988 by plaintiffs, Dwight and Anne Doskey, against Dawn M. Hebert, Spencer Pest Control, Terminix Service Company, Inc. and St. Paul Fire & Marine Insurance Company as a result of termite damage in the property at 5367 Canal Boulevard in New Orleans which Mr. and Mrs. Doskey purchased from Ms. Hebert on May 10, 1985. Following trial of this matter, the trial court maintained defendants' exception of prescription, dismissing plaintiffs' claims against all defendants. Plaintiffs now appeal. For the following reasons, we affirm in part and reverse in part the trial court's judgment.

FACTS
The house which is the subject of this dispute was inherited by Dawn Hebert from her parents following the death of her mother in 1984. Prior to this time, in August of 1975, Ms. Hebert's father contacted Dennis Miller Pest Control, a predecessor corporation of Spencer, to inspect the property and to issue a termite contract on it. In connection with this inspection, Dennis Miller Pest Control treated the residence in 1975 and issued a $50,000.00 Termite Warranty which was insured by St. Paul Fire and Marine. The warranty provided that termite damage which occurred and was discovered within two years of the date the warranty was issued, August 7, 1975, would be repaired at the expense of the contractor, Dennis Miller. The warranty agreement also extended its terms for ten years from the issue date, provided that the premises were reinspected annually at the expense of the owner. In 1977, the roof on the Hebert residence collapsed, and Mr. and Mrs. Hebert vacated the premises for several months for the repairs to be completed. Dawn Hebert was not living in this residence at the time of this incident.
In February of 1985, the Doskeys entered into a purchase agreement with Dawn Hebert for the purchase of this home. As a condition of the sale, the Doskeys included a termite inspection clause in the purchase agreement requiring that Ms. Hebert furnish a termite inspection report. Spencer, which had a current termite contract on the home, was contracted to perform the inspection and to issue a termite inspection report. Spencer performed the inspection on March 7, 1985 and issued a report entitled "Wood Destroying Insect Information" which indicated that there was "no visible evidence of infestation from wood destroying insects." However, the report listed as inaccessible areas or areas not inspected, the ceilings, walls, attic, and areas behind heavy furniture and appliances.
A copy of this report was received by the Doskeys on March 14, 1985. The Doskeys thereafter executed an acknowledgement that Ms. Hebert had complied with the termite inspection clause of the contract, and the act of sale took place on May 10, 1985.
Subsequent to the act of sale, the Doskeys continued to pay the required annual premiums to Spencer, and Spencer continued to make an annual inspection of the Canal Blvd. residence. On March 1, 1987, Dennis Miller *677 Pest Control d/b/a Spencer Pest Control was purchased by Terminix Service Co., Inc. Pursuant to the terms of the agreement, the Doskey's current termite contract was continued in effect by Terminix.
The Doskeys filed this petition for damages on March 7, 1988. Plaintiffs claims against Ms. Hebert were that she knew of the termite infestation and damage prior to the sale of the residence but failed to inform the Doskeys of this redhibitory defect. Plaintiffs' claims against Spencer and Terminix are that the original inspection by Spencer and that subsequent inspections and treatment by Spencer and Terminix of the house were negligently performed. Plaintiffs also contend that Spencer employees misrepresented to them that their home was not termite infested, thereby causing their damage. Plaintiffs contend that Terminix is also liable to them pursuant to their purchase of Spencer's termite contracts. As a result of this lawsuit, Terminix filed a cross-claim against Spencer for indemnification for any liability arising out of plaintiffs' claims.
This matter was tried on February 17-18, 1993. Mrs. Doskey testified at trial that she first noticed the presence of what she thought may be termite wings and bodies in her living room in the spring of 1986. She stated she did not know what termites or their damage looked like, although she stated she observed brown markings on the crown molding in the room. Mrs. Doskey telephoned Spencer who sent a representative out. Mrs. Doskey stated that she was told by the Spencer representative at this time that there was no termite activity in the home, and what she observed were just "swarmers."
On June 5, 1986, Spencer sent another representative to the Doskey home to conduct the annual inspection pursuant to the termite contract for the period from August of 1985 through July of 1986. Following an inspection, the representative completed an inspection certificate which was signed by Mrs. Doskey indicating that there was no evidence of termites found in the home. Although the certificate did include a notation that "old damage" was present, the certificate also indicated evidence of termite activity found during the inspection to be "none" and further indicated that the home was "not retreated." (See Exhibit "A(1)" attached hereto).
Mrs. Doskey testified at trial that the notation on the inspection ticket regarding old damage had no significance to her as the Spencer representative told her "everything was fine," and that there was no current termite activity in the house.
The record further indicates that less than three months later, on August 14, 1986, a Spencer representative again inspected the Doskey residence pursuant to the annual inspection provided in the contract for the period of August 1986 through July of 1987. In the certificate that was completed following this inspection, the inspector indicated that no evidence of termite activity was found, and on this certificate there was no notation concerning "old damage." (See Exhibit "A(2)").
Apparently, no further indication of termites was revealed until April of 1987, when Mrs. Doskey again found termite wings and bodies in her dining room and again telephoned Spencer. However, Spencer had been purchased by Terminix, and Terminix sent an employee to the Doskey home to conduct an inspection. During this inspection, live termite activity was discovered in the home, and Terminix treated the home to correct this problem.
Mr. Doskey testified at trial that based on Spencer's original report prior to the act of sale in 1985 and after Spencer inspected the house in 1986, he believed the house had no problem with termites. Mr. Doskey testified he first became aware of the termite infestation and damage in 1987 following Terminix's inspection of the home. Mr. Doskey testified that although the termite infestation had been cured by Terminix, there remained a substantial amount of damage to the home from the termite activity.
At the end of the trial, the trial court dismissed St. Paul Fire and Marine on a motion for involuntary dismissal. No appeal has been taken from this ruling. Also at the conclusion of trial, defendants Hebert, Spencer and Terminix raised an exception of prescription *678 arguing that plaintiffs' claims against them had prescribed as plaintiffs had first noticed the termite damage in 1986, over one year prior to filing suit. The matter was taken under advisement, and on March 30, 1993, the trial court rendered judgment maintaining the exception of prescription and dismissing plaintiffs' claims against all defendants. In its reasons for judgment, the trial court stated:
For prescription to begin running, a plaintiff need only have constructive knowledge of a claim. Trujillo v. Boone, 594 [539] So.2d 894, 896 (La.App. 4th Cir.) writ denied, 541 So.2d 895 (La.1989). Constructive knowledge is defined in Cartwright v. Crysler Corp., 255 La. 597, 232 So.2d 285 (1970), as "whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead, and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription."
Sometime before June of 1986, Mrs. Doskey noticed termite wings and bodies as well as damage in the living room on the left side of the fireplace. During this time Mrs. Doskey watched a television program on termites which alerted her to the fact that termites and/or termite damage might be present in her home. In June of 1986, a Spencer employee performed an annual termite inspection of the Doskey residence. The inspection ticket which Mrs. Doskey received indicated that there was "old damage" in the property which was contrary to the 1985 report issued prior to the act of sale. Mrs. Doskey admitted at trial that she signed the inspection ticket and that the factors relating to the termite problems in her home had been coming to her for a long time.
This Court concludes that the plaintiffs' awareness of the termite wings and bodies and flaking paint as well as the admission that they questioned whether the problems were related to termites all along are sufficient to have incited the curiosity much earlier. The plaintiffs are sophisticated, intelligent, articulate people. This Court concludes that prescription began to run on June 5, 1986. Plaintiffs' suit filed in 1988 was not timely. Plaintiffs' tort action has prescribed.

ASSIGNMENTS OF ERROR
On appeal, plaintiffs set forth two assignments of error: 1) that the trial court erred in excluding statements by employees of Spencer as hearsay; and 2) that the trial court erred in holding that the one year prescriptive period commenced to run on June 5, 1986 when the plaintiffs were given an inspection ticket by Spencer indicating old termite damage in the house.
With regard to the issue regarding the exclusion of evidence, plaintiffs contend that the trial court erred in sustaining defendants' objection of hearsay to the testimony as to what the Spencer employees told the Doskeys following their inspections. Plaintiffs argue that the testimony did not constitute hearsay as it was not offered to prove the truth of the matter, and it was further admissible testimony under the rules of evidence. We agree.
La.Code of Evidence art. 801(D)(3)(a) provides that "a statement by an agent or employee of the party against whom it is offered concerning a matter within the scope of his agency or employment" is not hearsay. Spencer does not deny that their representatives inspected the Doskey residence, or that they did so within the scope of their employment with Spencer. The statements made to Mrs. Doskey during these inspections are therefore not hearsay, and the trial court was clearly wrong in excluding the testimony.
However, no proffer of the testimony sought to be introduced was made on the record, and we are therefore unable to review this issue. Nevertheless, we find sufficient evidence in the record which leads us to conclude that the trial court ruled incorrectly on the exception of prescription raised by Spencer and Terminix.
On the prescription issue, plaintiffs argue that they received representations from Spencer's employees that there was no evidence of termite activity in their home, that *679 they reasonably relied on these representations and that they therefore did not take action until they were informed by Terminix that their home was infested with termites. Plaintiff argues that the doctrine of contra non valentem prevented the running of prescription until April 8, 1987 when they were informed of the termite activity in their home.
The defendants' contention is that prescription began to accrue when plaintiffs first noticed evidence of what was later confirmed to be termite wings and bodies in their home and were given an inspection ticket which indicated old damage was present contrary to the inspection conducted a year earlier prior to the act of sale.
The applicable prescriptive period for plaintiffs' tort claim is found in LSA-C.C. art. 3492 which provides that delictual actions are subject to a liberative prescription of one year which commences to run from the day injury or damage is sustained. The prescriptive period for plaintiffs' claim against Ms. Hebert is one year from the act of sale, or if the seller is found to be in bad faith, one year from the purchaser's discovery of the defect. LSA-C.C. art. 2546. These prescription statutes are strictly construed against prescription in favor of the obligation sought to be extinguished by it. Bouterie v. Crane, 616 So.2d 657 (La.1993). Nevertheless, when a petition reveals on its face that prescription has run, the plaintiff has the burden of showing why the claim has not prescribed. Bouterie v. Crane, supra.
In the present case, the trial court apparently found Ms. Hebert was not in bad faith in selling the home to the Doskeys. Based on our review of the record, we find no evidence that the seller, Ms. Hebert, was aware of the termite infestation in the home prior to the act of sale. She testified at trial that she was aware of no pre-existing termite damage or problem in the home, and was informed in 1985 by Spencer with whom she maintained a termite contract that there was no current infestation or damage from termites in the house. Although a neighbor testified that the roof of the residence had collapsed in 1975 due to termite damage, there was no evidence presented that Ms. Hebert knew of this situation as she was living out of town at the time. Under these circumstances, absent evidence of bad faith of Ms. Hebert, plaintiffs' claims against her prescribed one year from the date of the act of sale, May 10, 1985, and the suit filed in March of 1988 is untimely.
However, although plaintiffs' tort action against Spencer and Terminix is also subject to a one year period of prescription, Louisiana courts have applied the doctrine of "contra non valentem agere nulla currit praescriptio," (no prescription runs against a person unable to bring an action), in very limited circumstances to prevent the running of liberative prescription "where in fact and for good cause, a plaintiff is unable to exercise his cause of action when it accrues." Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La.1979).
In such case, the prescriptive period begins to run on the date that the injured party discovered or should have discovered the existence of facts that would entitle him to bring suit. Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970). The Louisiana Supreme Court in Corsey, supra, listed four categories of situations where Louisiana courts have applied the doctrine of contra non valentem to prevent the accrual of liberative prescription: (1) Where there is some legal cause which prevented the Courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
The first two categories of the doctrine are not relevant to this case and, therefore, are not further discussed. The third and fourth categories are both relevant. The third category applies to cases where defendant engages in conduct which prevents *680 the plaintiff from availing himself of his judicial remedies. The cause of action accrued, but plaintiff was prevented from enforcing it by some reason external to his own will. Corsey, supra. The fourth category, commonly known as the discovery rule, provides that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. Prescription does not accrue as it does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Wimberly v. Gatch, 635 So.2d 206, 211-212 (La.1994).
We have thoroughly reviewed the record before us, and find that the testimony of the Doskeys that they did not discover the termite damage in their home until April of 1987 to be uncontradicted. Although defendants suggest that plaintiffs learned of the termite problem in their home in 1986 when they found what they suspected to be termite wings and bodies and markings in the dining room, this suspicion was negated by the reassurances given them by Spencer who inspected the home and told the Doskey they had no termite problems.
Defendants contend that in order for the doctrine of contra non valentem to apply, defendants must have deliberately concealed from plaintiffs the facts upon which their cause of action is based. However, the law provides that prescription does not run where the defendant's conduct prevents plaintiff from knowing or acting upon his cause of action. Corsey, supra. There is no requirement that such conduct be deliberate or intentional, but only that defendant does some act which effectually prevents plaintiff from availing himself of his cause of action. In addition, the fourth type of situation where contra non valentem applies is where the cause of action is not known or reasonably knowable to the plaintiff, even where his ignorance is not induced by defendant.
In the present case, the evidence shows that although plaintiffs were initially concerned with evidence in their home which they feared might be related to termites, they were repeatedly assured by Spencer representatives that the evidence was just "swarmers" and that plaintiffs had nothing to be concerned about. Although plaintiffs acted reasonably and diligently in trying to determine whether a problem existed in their home, they were told by the experts that no problem existed. This is certainly a case where plaintiffs were prevented from knowing or acting upon their cause of action based on the conduct of defendant, and the doctrine of contra non valentem is clearly applicable here.
In its reasons for judgment, the trial court relied on the inspection certificate indicating "old damage" which was given to Mrs. Doskey by Spencer in June of 1986 to start the running of prescription. However, this same certificate also indicated that the inspector had found no evidence of current activity in the Doskey residence. (Exhibit "A(1)"). At the same time, it is undisputed that the Spencer representative verbally informed Mrs. Doskey that there was no live termite activity in the home, and that "everything was fine."
The fact that some old termite damage was visible in the June 1986 inspection, even though it conflicted with a prior report, did not put plaintiffs or even the termite experts, Spencer, on notice that there might be extensive termite damage requiring further investigation. If this were the case, the termite company certainly would have alerted plaintiffs to the fact that something needed to be done or that the house needed to be treated. There is no indication in the record that the inspector recommended further treatment, and in fact, the record shows that the certificate completed by the inspector on June 5, 1986 indicated that no evidence of termites, other than the old damage noted, was found in the Doskey residence.
In addition, the evidence in the record shows that Spencer reinspected the Doskey residence in August of 1986, less than three months later, and did not note any evidence of "old damage" on the inspection certificate. (Exhibit "A(2)"). Rather, the certificate presented to the Doskeys in August of 1986 stated that no evidence of termite activity was found in the Doskey residence and there *681 was no evidence presented that the Doskeys were informed or should have known they needed to take further action at this time.
Our review of the record shows that Spencer gave the Doskey residence, in Mrs. Doskey's words, "a clean bill of health" in 1986, and neither plaintiffs nor the termite experts were able to discover the defect complained of, that is the extensive termite damage, until April of 1987 when Terminix inspected the house.
Applying these facts to the law on prescription, we conclude that the trial court erred as a matter of law in determining that the evidence presented was sufficient to start the running of prescription in June of 1986. The law is clear that prescription does not start to run until plaintiff either discovered or should have reasonably discovered the alleged vice. In this case, the evidence is unrefuted that the termite infestation and resulting damage was not discovered in 1986 by Spencer, the termite experts, or by plaintiffs. Under these circumstances, we conclude that the trial court erred as a matter of law in determining that prescription began to run in 1986. Under the law of prescription and its suspension, specifically the well-established doctrine of contra non valentem, prescription did not begin to run until April of 1987 when the damage was reasonably knowable to plaintiffs. This lawsuit was filed in March of 1988. The Doskeys, therefore, are entitled to recovery.

LIABILITY
Having found that plaintiffs' claims are not barred by prescription, we must next determine whether defendants are liable for plaintiffs' harm. As noted earlier, our review of the record reveals no evidence which indicates that the seller of the property, Dawn Hebert, knew of the existence of the termite infestation or damage in the home she sold to the Doskeys, and therefore she cannot be held liable to plaintiffs for plaintiffs' claim brought three years after the sale of the house.
With regard to plaintiffs' claims against Spencer Pest Control, plaintiffs allege in their petition for damages that Spencer in its 1985 "Wood Destroying Insect Information" form, negligently misrepresented to plaintiffs that the home which they were purchasing was free from termite infestation and damage and that plaintiffs relied on this information in purchasing the home. Plaintiffs further allege that the subsequent inspections performed by Spencer pursuant to an ongoing contract with the Doskeys were negligently performed and that Spencer's failure to discover and treat the termites in plaintiffs' home caused their damage.
In order for defendant to be held liable, a duty-risk analysis requires the following elements to be present:
1) there must have been a duty owed on the part of the defendant to supply the correct information to plaintiffs regarding the condition of the home they sought to purchase and a duty to discover any further termite activity and keep the premises free from termite infestation;
2) there must be a breach of that duty;
3) and the breach of the duty owed must have caused damage to the plaintiff.
See, Payne v. O'Quinn, 565 So.2d 1049 (La. App. 3rd Cir.1990). In Payne, the Court held that the purchaser of a termite-infested house has a cause of action for negligent misrepresentation against a termite company which contracted with the former owner of the house to inspect the property prior to the sale.
In the present case, we find that Spencer had a duty to these plaintiffs as a result of their inspection of the Canal Boulevard home in 1985 and the "Wood Destroying Insect Information" form they provided to plaintiffs to provide accurate information to plaintiffs regarding the presence of termite activity, either current or past, in the home. Further, by virtue of the ongoing contract which existed between Spencer and the Doskeys, Spencer assumed the duty of inspecting the Doskey residence on an annual basis and of properly treating and exterminating any termite activity found upon those inspections.
Although the record does not clearly indicate whether the home purchased by the Doskeys was infested with termites at the time of the act of sale, the record does indicate that the home had sustained previous *682 damage from the existence of termites therein. Further, the record clearly indicates that during the term of the contract between Spencer and the Doskeys, termite activity was found within the Doskey residence which required treatment and caused extensive damage.
We find that the evidence in this case preponderates that Spencer Pest Control, through its authorized employees and representatives, failed to properly inspect the Doskey residence, and failed to discover the presence of termites in the home and convey this information to the Doskeys. Accordingly, we find that Spencer owed a duty to the Doskeys, and breached that duty not only when it failed to discover the presence of termites in the home, but also when it misrepresented to plaintiffs that they had nothing to worry about.
The next inquiry in a duty-risk analysis is whether Spencer's negligent conduct was a cause in fact of the resulting harm. Plaintiffs both testified that they did not observe any termite damage to the home prior to their purchase of the property. Mr. Doskey testified that he relied on the report given him by Spencer prior to the act of sale which indicated no presence of termite activity, either current or old damage. Further, both plaintiffs testified that when they became concerned about the possibility of termites being present, they were reassured by Spencer representatives that there was no termite activity in their home and based on these representations, they did not investigate further.
Under these circumstances, we find that Spencer Pest Control breached a duty owed to these plaintiffs, and this breach was a cause in fact of the harm, structural damages which occurred to their home as a result of the failure to discover the termite activity.
However, the record indicates that the pest control business operated in the New Orleans area known as Dennis Miller Pest Control, Inc. d/b/a Spencer Pest Control, was purchased by Terminix Service Company, Inc. by agreement dated March 1, 1987. With regard to liability for claims arising out of the termite contracts, Paragraph 4 of that agreement states:
Seller [Spencer] agrees to hold Purchaser [Terminix] harmless and indemnify it against any liability to any creditor or Vendor should any such claimant appear or liability arise. This indemnification applies to any and all claims for any reason presently pending against Seller; potential claims against Seller for which Seller presently had knowledge, information or suspicion that a claim will be made hereafter. Any claims arising after this transaction and resulting out of the pest control or termite contracts already in effect which have not already arisen or for which Seller has no prior knowledge, information or suspicion will be the responsibility of and obligation of the Purchaser.
Terminix argues that it is not liable for plaintiffs' claims that Spencer negligently rendered the 1985 "Wood Destroying Insect Information" as Terminix did not assume liability for the findings in this report. Terminix contends that the purchase of Spencer's business was a purchase of the assets only, and did not include an assumption of liability for claims against Spencer relating to reports issued which did not arise out of existing termite contracts.
At trial, Jim Spencer, the owner of Spencer Pest Control, testified that prior to the sale of his New Orleans business to Terminix, no claim by the Doskeys had arisen out of this termite contract on the Canal Blvd. property. Further, he testified he had no knowledge or even a suspicion that such a claim would arise, and that his intent in entering into the agreement with Terminix was to relieve himself of any liability for claims on current contracts of which he was not aware or which had not yet arisen.
The record also includes the testimony of Ed Martin, President of Terminix Service Company, who testified that Terminix did not purchase any unknown or undisclosed liabilities of Spencer other than those specifically enumerated in the document, i.e., those attributable to the existing continuing termite and pest control contracts and the services provided pursuant to those agreements only. On appeal, Terminix contends that by the terms of the agreement between the *683 parties, Spencer agreed to hold Terminix harmless and to indemnify it against any liability attributable to Spencer.
However, our reading of the sale of business agreement between Spencer and Terminix indicates that Spencer agreed to hold Terminix harmless and indemnify it against liability only for those claims presently pending against Spencer or for those which Spencer had knowledge at the time the agreement was signed.
The evidence in the record shows that Spencer did not have knowledge of the Doskeys' claims, and Spencer had in fact failed to even discover or notify the Doskeys of the presence of termite activity in their home at the time the transaction with Terminix was entered into. The record shows that it was not until approximately one month after the business was purchased by Terminix that the Doskeys became aware of their claim. Further, the Doskey's claims against Spencer arose directly from the existing termite contract in effect between Spencer and the Doskeys, and not solely from the wood infestation report prepared in 1985 by Spencer. Under these circumstances, where the Doskey's claim against Spencer arose after the transaction took place between Spencer and Terminix and resulted out of the termite contract already in effect at the time of the transaction for which Spencer had no prior knowledge, we find Terminix to be liable for such claim pursuant to the agreement between the parties. We further find that Terminix is not entitled to be held harmless as a result of this liability or to indemnification from Spencer based on the express terms of the contract. For this reason, we affirm the trial court's ruling dismissing Terminix's cross-claim against Spencer.

DAMAGES
Having found Terminix liable for plaintiffs' damages, we must next determine the extent of such damages as evidenced by the record.
At trial, plaintiffs introduced the testimony of Joseph Virdagomo, who was qualified by the court in the field of general contracting. Mr. Virdagomo testified that he conducted an inspection of the Doskey home at the request of the Doskeys for the purpose of giving an estimate as to the total cost of repairing the termite damage. In the latter part of 1991, Mr. Virdagomo gave the Doskeys an itemized listing of the repairs required and the cost of each item. The total amount of the estimate was $40,060.00, including twenty percent profit for Mr. Virdagomo which he testified was his standard rate.
Plaintiffs also introduced the testimony of Mr. Doskey who testified that sometime after he received the estimate from Mr. Virdagomo, he spoke with the contractor by telephone, and learned that the prices quoted were subject to increase depending on when the work was contracted. Based on this information, Mr. Doskey prepared a itemized list of the repairs to be completed totalling $46,060.80. This letter was mailed to all counsel in September of 1992 and was introduced at trial. Mr. Doskey testified that the price differential was reflective of the price increase as conveyed to him by Mr. Virdagomo between the original date of the estimate and the time of Mr. Doskey's letter to counsel.
However, Mr. Virdagomo did not recall giving Mr. Doskey the higher figures, and there was no evidence presented at trial which substantiated this amount, other than the letter prepared by Mr. Doskey. There has been no evidence presented that Mr. Doskey is an expert in general contracting, or that the increased figures have a reliable basis. We therefore decline to adjust the estimate set forth by plaintiffs' general contracts based on the unsubstantiated testimony of Mr. Doskey.
Defendants introduced no evidence at trial regarding the amount of damages sustained by the plaintiffs as a result of the termite activity, although the evidence indicates that a contractor did examine the Doskey residence prior to trial on behalf of defendants.
Based on the record before us, we find that the evidence in the record supports an award of damages to the Doskeys for the repair of the termite damage based on the estimate prepared by the general contractor in the amount of $40,060.80.
*684 However, although damages for mental anguish and inconvenience are recoverable under LSA-C.C. art. 2315, we find insufficient evidence in the record to sustain plaintiffs' claims for general damages for mental anguish and for moving and relocating expenses as a result of the repairs and we therefore reject these claims.

DECREE
Accordingly, for the reasons assigned, the judgment of the trial court dismissing plaintiffs' claims against Dawn M. Hebert is hereby affirmed. The judgment which dismissed all cross-claims is also affirmed.
However, the judgment of the trial court granting defendants' exception of prescription and dismissing plaintiffs' claims against Spencer Pest Control and Terminix Service Co., Inc. is hereby reversed. Judgment is hereby rendered in favor of plaintiffs, Anne and Dwight Doskey, and against defendant, Terminix Service Co., Inc. in the full amount of $40,060.80 together with legal interest from date of judicial demand. All costs in the trial court and of this appeal are assessed against defendant, Terminix.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
*685